Maria Cristina Rodriguez
WEISS, Appellant,

v.

MECHANICAL ASSOCIATED SERVICES, INC.; Merry X–Ray Chemical Corporation; and Norman, Brennan, Riley, Works, Stewart and Associates d/b/a South Texas Radiology Group, Appellees.

No. 04–98–00249–CV.

Court of Appeals of Texas, San Antonio.

Jan. 27, 1999.

Steven E. Clark, Clark & Ashworth, L.L.P., Dallas, for Appellant.

Richard A. Sparr, Jr., Sparr & Associates, Inc., San Antonio, John E. Pipkin, Johnson, Ferguson & Pipkin, Houston, Margaret P. Sullivan, Carl A. Werner, Cox & Smith Incorporated, San Antonio, for Appellees.

Before ALMA L. LOPEZ, Justice, CATHERINE STONE, Justice and PAUL W. GREEN, Justice.

## OPINION

PAUL W. GREEN, Justice.

In this toxic tort case, Maria Cristina Rodriguez Weiss sued Mechanical Associated Services, Inc. (MAS); Merry X–Ray Chemical Corporation (MXR); and Norman, Brennan, Riley, Works, Stewart and Associates doing business as South Texas Radiology Group (STRG)[1] to recover for injuries allegedly caused by exposure to glutaraldehyde, a chemical used to develop x-rays. The trial court granted the defendants' no-evidence motion for summary judgment. We affirm the summary judgment because Weiss produced no evidence of causation.

### FACTUAL AND PROCEDURAL BACKGROUND

Weiss worked as a nurse and office administrator for Dr. Robert Schnitzler, who relocated his office to the fourth floor of the South Texas Cardiovascular Center building in December 1991. In February 1992, STRG opened its office, on the third floor of the same building, immediately below Schnitzler's office. STRG processed its x-ray films with a Kodak developer installed by MXR.

In the spring of 1992, Weiss and her co-workers began to suffer numerous health problems, which they suspected were caused by a condition in the building. They experienced chronic colds and sinus infections, watery eyes, nasal burning, and nosebleeds. They also noted poor air circulation on the fourth floor and the presence of a white dust. These conditions also existed on the third floor. In particular, the technician operating the developer experienced symptoms similar to Weiss's and noted white dust in the devel-

---

1. The three companies will be referred to as "the defendants" when mentioned collectively.

oping room. By July 1994, Weiss had developed asthma, was diagnosed with reactive airways disease, was hospitalized, and was unable to return to work for approximately eighteen months.

At Dr. Schnitzler's request, the property manager, 4M Properties, Inc., initiated an inspection of the building. In October 1994, Walter Gleye, an engineer, inspected the ventilation and air conditioning system, installed by MAS, as it affected Dr. Schnitzler's suite. When Gleye entered STRG's suite during the inspection, he experienced watering eyes and a burning sensation in his nose. To Gleye, these reactions indicated the presence of airborne chemicals. Upon closer inspection, Gleye determined that STRG's x-ray developer had been improperly vented to the building's general exhaust system. Gleye further noted that the fan coils above STRG's office were the only corroded coils in the building. Finally, Gleye contacted Kodak for information about the chief chemical components of the developing process, which he discovered were acetic acid, sulphur dioxide, glutaraldehyde, and ammonia. At Gleye's suggestion, a dedicated exhaust for the developer was installed during November and December of 1994. Schnitzler's employees subsequently noticed their symptoms improved.

Weiss, however, did not experience this same improvement upon her return to work. She sued the defendants for negligence after being diagnosed with chemical exposure, chronic fatigue, vasculitis, asthma, possible organic brain syndrome, autoimmune disease, and autonomic dysfunction. Later, Weiss consulted Dr. Gunnar Heuser for further tests and diagnosis. Heuser concluded Weiss suffered from immune system dysfunction and cognitive impairment. Heuser further detected antibodies to environmental chemicals and other manifestations of neuropathies.

After Weiss filed suit, 4M Properties hired two certified industrial hygienists to conduct air quality surveys. One hygienist, Ronald M. Bishop, recognized the odor of acetic acid in STRG's suite and conducted a limited air quality survey, testing for acetic acid, sulfur dioxide, ammonia, and carbon dioxide. In his report, Bishop concluded that these elements, if present, existed at levels below detection. Bishop also analyzed a sample of the white dust and discovered it contained aluminum. Because aluminum chloride may precipitate during the photographic developing process, Bishop suspected the developer was the source of the dust.

The second hygienist, Robert W. Miller concentrated his testing on the design of the building's airway system. In particular, he discovered unsealed gaps between the floors and leaks in the exhaust system, which facilitated the travel of chemicals from the third to the fourth floor. Furthermore, Miller experienced eye and nose irritation when standing near the developer, even with the dedicated exhaust mechanism in place. Finally, Miller noted a high level of bacteria, mold, dust, and mildew in the building, which was partially attributable to wet insulation in the ceiling.

Miller found a "very high probability" that STRG's developer contaminated the fourth floor's air. However, he did not identify the offending chemical. In his opinion, chemical analysis of the air would be of no value unless the atmospheric conditions present immediately after the developer's installation could be replicated. Accordingly, he based his conclusion on his evaluation of the building's ventilation history and the fourth-floor-employee interviews.

Weiss retained two toxicologists to review her case, providing them with her medical records, the results of the chemical tests, and the depositions taken to date. In his deposition, Dr. James C. Garriott acknowledged that glutaraldehyde had not been tested for or otherwise detected in the building but stated he had "adequate reason to believe that this chemical, which is very volatile, did enter workplace areas in the office environment of Christina Weiss."[2] He based this

---

2. In his written affidavit, however, Dr. Garriott did not identify glutaraldehyde as the cause of Weiss's illness. Rather, he concluded that "Weiss's illness most likely stemmed from chronic exposure to environmental chemicals and/or other environmental contaminants present in the new office building in which she worked since 1991."

belief on his review of the symptoms of Weiss and her coworkers. Dr. Garriott noted that Weiss's symptoms were typical of patients suffering from chemical sensitivities and chronic immune dysfunction syndrome, which often stems from low-level chemical exposure. Furthermore, Dr. Garriott acknowledged the possibility that a chemical could avoid detection yet still exist at a level high enough to cause illness. Finally, Dr. Garriott conceded that he made assumptions in arriving at his opinion, that he would be more at ease with his conclusions had glutaraldehyde been detected, and that he could not rule out other possible causes of Weiss's illness.[3]

Dr. Thomas Musta–Dydek rendered an opinion similar to Dr. Garriott's. According to Dr. Musta–Dydek, exposure can be inferred, in the absence of sampling data, from the manifestation of physical symptoms. He noted that Weiss's symptoms were consistent with exposure to any of the four major chemical components of STRG's x-ray developer: acetic acid, ammonia, glutaraldehyde, and sulfur dioxide. Furthermore, he reasoned that the chemicals must have been present, at a minimum, in the amount at which their odor is detected. In his opinion, those levels were high enough to cause illness. Because glutaraldehyde is the most toxic of the four chemicals, Dr. Musta–Dydek concluded, "within a reasonable degree of scientific probability, that some of the health problems reported by [ ] Weiss were likely to have been caused by exposure to chemicals from the x-ray film processor operated by [STRG]" and that glutaraldehyde was probably the most culpable chemical. Finally, Dr. Musta–Dydek could not rule out the possibility that mold, fungi, or any other microorganism that had been detected in the environmental study caused Weiss's illness. He also acknowledged that Weiss exhibited many of her symptoms before she began working in the building.

Weiss amended her petition alleging STRG negligently operated its processor without a dedicated exhaust mechanism. In addition, she accused MAS of negligently installing the building's ventilation system by failing to provide a dedicated exhaust duct for STRG's developer. Finally, she contended MXR negligently installed the developer by failing to vent its exhaust to the air outside the building. All of these negligent acts or omissions, Weiss alleged, caused the circulation of glutaraldehyde inside her workplace proximately causing her injuries.

More than two years after Weiss initially filed suit, MXR filed a no-evidence motion for summary judgment on all of Weiss's claims. STRG and MAS did likewise in the next two months. The three motions essentially asserted the same grounds. Pursuant to TEX. R. CIV. P. 166a(i), the defendants maintained there was no evidence that glutaraldehyde was present in the building, that Weiss was exposed to glutaraldehyde, or that Weiss's illness was caused by glutaraldehyde. The defendants further contended that in the absence of data or other evidence of glutaraldehyde emission and exposure, any expert testimony regarding causation would be "no evidence."

Weiss responded, producing depositions and expert testimony. She relied on Gleye's deposition and affidavit to demonstrate emission and exposure of glutaraldehyde. In addition, as evidence of causation, she directed the court to the affidavits and depositions of the industrial hygienists and toxicologists. The defendants jointly replied that none of Weiss's proof was evidence of the presence of glutaraldehyde or its causation of Weiss's illness. The trial court rendered judgment for the defendants.

## STANDARD OF REVIEW

TEX. R. CIV. P. 166a(i) invokes a no-evidence standard. When a party moves for summary judgment alleging the non-movant lacks evidence to carry its burden of proof, the non-movant must produce some evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i). At this early stage of litigation, the non-movant need not "marshal its proof;" rather it "need only point out evidence that

---

**3.** Other possible causes of Weiss's illness mentioned by Dr. Garriott include exposure to formaldehyde or ammonia, or to the excessive mold, fungi, bacteria, and dust also found in the building.

raises a fact issue on the challenged elements." TEX.R. CIV. P. 166a(i) cmt.

Summary judgment is not appropriate, however, if the only evidence offered to prove an essential element of the claim cannot be given weight by the court. *See id.;* W. Wendell Hall, *Standards of Review in Texas,* 29 ST. MARY'S L.J. 351, 419 (1998). In other words, the non-movant may not rely on evidence that is barred from consideration by rules of law or evidence, or that amounts to no more than a scintilla. *See* Hall, 29 ST. MARY'S L.J. at 419; *see also Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). Less than a scintilla of evidence exists where the evidence is "so weak as to do no more than create a mere surmise or suspicion." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

Finally, we review the evidence in the light most favorable to the non-movant, while disregarding all contrary evidence and inferences. *Moore v. K–Mart Corp.,* 981 S.W.2d 266, 268–69 (Tex.App.—San Antonio 1998, pet. denied); *see also Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994) (reviewing summary judgment under analogous federal rule). When, as in this case, the judgment omits the grounds upon which it was granted, we will affirm on any meritorious theory advanced in the motion. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

## WEISS'S EVIDENCE

Weiss argues summary judgment was improper because she produced some evidence of each element of her cause of action. In particular, she contends the trial court disregarded her circumstantial and expert evidence of contamination, exposure, and causation.[4] Responding, the defendants maintain Weiss's expert evidence is "no evidence" because it lacks a scientifically-reliable foundation and is therefore merely speculative.

Without deciding whether Weiss produced evidence of contamination and exposure,[5] we agree with the defendants that Weiss produced no evidence that glutaraldehyde caused her illness. First, her expert testimony would be inadmissible at trial pursuant to rule 705(c) of the Texas Rules of Evidence. Second, even if she were able to present this evidence to a jury, she would not survive a legal sufficiency challenge.

### 1. Admissibility

■ Assuming the trial court predicated its ruling on a finding that the expert opinion evidence was inadmissible, we review its determination for an abuse of discretion. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995).[6] A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). We may not, however, conclude a trial court abused its discretion simply because we disagree with its ruling. *See id.* at 242.

■ TEX.R. EVID. 705(c) precludes the admission of an expert opinion that is not based on a reliable foundation. *See Robinson,* 923 S.W.2d at 556 (discussing rule in the context of former TEX.R. CIV. EVID. 702). The proponent of the evidence bears the burden of demonstrating scientific reliability. *Id.* at 557. The non-exclusive list of factors the court may consider in deciding admissibility includes the extent to which the theory has been or can be tested, the extent to

---

**4.** Weiss also maintains the trial court improperly reviewed her evidence for factual sufficiency. To the contrary, the trial court repeatedly asked Weiss's counsel to direct him to her evidence of causation. Accordingly, the trial court apparently based its ruling on the *absence* of evidence rather than on a weighing of it.

**5.** We also decline to review Weiss's evidence of duty and breach because it was not addressed in the summary judgment motion.

**6.** Weiss contends the defendants did not preserve their *Robinson* argument for review because they failed to request a *Robinson* hearing and secure a formal *Robinson* ruling from the trial court. Weiss's contentions are without merit because she carried the burden to bring forward competent evidence. Furthermore, she was notified of the defendants' intent to challenge the scientific reliability of her evidence when she was served with their motions for summary judgment. Finally, the trial court's order is, in effect, a ruling on the defendants' *Robinson* challenge.

which the technique relies upon the subjective interpretation of the expert, whether the theory has been subjected to peer review and/or publication, the technique's potential rate of error, whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community, and the non-judicial uses that have been made of the theory or technique. *Id.; see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 275 (5th Cir.1998).

■ Applying these principles, we cannot conclude the court abused its discretion in excluding Weiss's expert testimony of causation. First, neither of Weiss's experts relied on any particular theories that had been or could be tested. To the contrary, their opinions were highly subjective. For example, Dr. Garriott stated that he made assumptions in drawing his conclusion that glutaraldehyde caused Weiss's illness, and that he would have been more confident in his opinion had glutaraldehyde been detected. In fact, he noted in his affidavit that no testing for glutaraldehyde had been performed as of the time he analyzed Weiss's condition. Furthermore, Dr. Musta–Dydek's conclusion that Weiss's problems were, "within a reasonable degree of scientific probability," caused by exposure to the developer's chemicals did not appear to be based on any scientific evidence at all. In the absence of sampling data, Dr. Musta–Dydek inferred Weiss had been exposed to glutaraldehyde. In sum, both experts assumed emission and exposure to reach the conclusion that Weiss's illness was probably caused by glutaraldehyde and no other contaminant.

Weiss's expert testimony further falls short of compliance with the remaining *Robinson* factors. When rendering their opinions, neither expert compared Weiss to the subjects of any epidemiological studies of the effects of glutaraldehyde exposure. Furthermore, neither expert demonstrated that his method of diagnosis was generally accepted as valid by the relevant scientific community.

Finally, the potential rate of error appears significant given each expert's inability to rule out other possible causes of Weiss's illness.[7]

## 2. Legal Sufficiency

■ Even if Weiss were to survive an admissibility challenge to her expert opinion evidence, judgment in her favor would nevertheless be improper because the opinions are "no evidence" of causation under Texas law. *See Havner,* 953 S.W.2d at 711–12; *Schaefer v. Texas Employers' Ins. Ass'n,* 612 S.W.2d 199, 202–05 (Tex.1980). The scintilla test cannot be met by producing a bare expert opinion. *Havner,* 953 S.W.2d at 711–12. Nor may it be met by assurances that generally accepted scientific principles were used or by using "magic words" like "reasonable medical probability." *Schaefer,* 612 S.W.2d at 204–05; *cf. Moore,* 151 F.3d at 276. Rather, we must delve into expert opinion to determine reliability, which we judge by examining the *Robinson* factors as discussed above. *See Havner,* 953 S.W.2d at 712.

"To raise a fact issue on causation and thus to survive legal sufficiency review, a claimant must do more than ... show a substantially elevated risk.... Further, if there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes within reasonable certainty." *Id.* at 720. While causation may be proved by expert testimony, the probability about which the expert testifies must be more than coincidence for the case to reach a jury. *Schaefer,* 612 S.W.2d at 202. Weiss's expert testimony closely resembles that in *Schaefer,* where the expert testified that bacteria, which may have been present in the soil where Schaefer worked, caused his disease. The supreme court observed, however, that Schaefer's evidence failed to show that any of the bacteria was present in the soil, what strain of bacteria Schaefer suffered from, or where or how he contracted it. *Id.* at 203. Thus, the court held the opinion

---

7. In essence, Weiss employs a *res ipsa loquitur* analysis: because she shows symptoms of exposure to a toxic chemical transferred by means over which the defendants maintained control, the defendants must be negligent. *Res ipsa,* however, is appropriate only where the likelihood of other causes is "so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant[s'] door." *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986).

constituted no more than mere possibility, speculation, and surmise and could not be evidence of causation. *Id.* at 204.

Weiss distinguishes her case from *Schaefer* on the basis that she produced *some* evidence, albeit circumstantial, of exposure to glutaraldehyde. This distinction is without merit. In *Havner,* the court found no evidence of causation, despite evidence of exposure, because Havner failed to introduce evidence excluding other plausible causes with reasonable certainty. *Id.* at 730. In particular, the court observed the expert opinion was unsupported by the epidemiological studies cited within and was based on unreliable medical opinions. *Id.*

For the same reasons the expert opinions were disregarded in *Havner* and *Schaefer,* we hold that Weiss's expert evidence is no evidence of causation. Although Weiss might be able to demonstrate exposure through circumstantial evidence, *Schaefer* precludes her experts from stacking inference upon inference in forming their opinions of causation. Furthermore, *Havner* requires that these opinions be devalued because none of Weiss's experts were able to rule out other potential causes of Weiss's illness with reasonable certainty.

### Conclusion

We affirm the summary judgment because Weiss produced no evidence of causation.