Carol Ann HENRY and James S. Henry, Appellants,

v.

DILLARD DEPARTMENT STORES, INC., Pulaski Adjustment Company, and Pulaski Realty Company d/b/a Pulaski Adjustment Company, Appellees.

No. 04–99–00112–CV.

Court of Appeals of Texas, San Antonio.

Feb. 23, 2000.

Rehearing Overruled May 24, 2000.

From the 225th Judicial District Court, Bexar County, John J. Specia, Jr., Judge Presiding.[1]

Brian A. DeVaney, Andrew E. Toscano, Robert L. Wilson, III, The Kugle Law Firm, San Antonio, for Appellant.

David B. Edwards, Michael Phillips, Phillips & Akers, P.C., Houston, for Appellee.

Sitting: TOM RICKHOFF, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: PAUL W. GREEN, Justice.

Appellants Carol Ann Henry and James S. Henry appeal from summary judgment granted in favor of Mrs. Henry's employer, Dillard Department Store, Inc., and its wholly owned adjuster, Pulaski Adjustment Company (referred to collectively as "Dillard"). Mrs. Henry alleges she suffered a back injury on February 12, 1994, while moving furniture in the course of her employment. The Henrys brought this suit against Dillard for breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, breach of contract, and conspiracy to deny benefits, alleging unreasonable denial or delay of workers' compensation benefits under the Texas Workers' Compensation Act, TEX. LAB. CODE ANN. §§ 407.001, et seq. (Vernon 1996 & Supp.1999). In two points of error, the Henrys argue (1) they are not required to exhaust administrative remedies under the Texas Workers Compensation Act (the Act) prior to bringing their extra-contractual tort and statutory claims, and (2) genuine issues of material fact regarding Dillard's handling of the claim preclude summary judgment. We affirm the trial court's judgment.

## Background

Mrs. Henry left work on Saturday, February 12, 1994, complaining she felt ill. She says she told a co-worker, Stacey, she had hurt her back and felt sick. Mrs. Henry claims she had severe back pain that continued to worsen through the weekend. On Monday, February 14, she contacted Dr. Baylan and was seen by him. He took a history and performed an initial exam. He then referred her to her primary health insurance physician. Dr. Quiroz saw Mrs. Henry the same day, prescribed pain killers and sent her home to rest. Mrs. Henry's condition continued to deteriorate and she complained of numbness in her feet and difficulty urinating. Dr. Baylan admitted Mrs. Henry to Santa Rosa Hospital for tests on February 15, 1994. At that time, his office and the hospital contacted Dillard to determine if workers compensation coverage would apply.[2] Linda Collins, the adjuster handling the claim, says she received no information about the claim until after Mrs. Henry was admitted to the hospital.

Ms. Collins initially told Baylan's office she was not sure there had been an on-the-job injury and she was not authorizing workers compensation benefits. Ms. Collins says she told the doctors to contact the benefits coordinator for Mrs. Henry's health insurance to get her set up for

---

1. The Honorable David Peeples signed the Order granting summary judgment.

2. Dillard is self insured under the Act and Pulaski Adjusting Company, a wholly owned Dillard subsidiary, handles Dillard's workers compensation claims.

those claims since it did not appear workers compensation would cover the problem. Ms. Collins then requested medical records. Some records were provided but Dr. Baylan's office refused to provide the initial patient information form filled out by Mrs. Henry on her first visit to his office, February 14, 1994.

Tests were performed on February 16 and 17, and a neurological consult was held with Dr. Dossman on February 18. More tests were performed on the 21st and 22nd. After a myelogram was run on February 22, Mrs. Henry was diagnosed with cauda equina. Ms. Collins testified she was never asked to authorize any procedure until Dr. Dossman called on February 23 to get authorization for emergency spinal surgery. She told him she did not believe this was a compensable injury under workers compensation. Nevertheless, surgery was performed on February 24, 1994.

Ms. Collins testified she received conflicting information about the claim. She says Stacey told her Mrs. Henry left work because she had the flu. Another employee said Mrs. Henry called in the next day, February 13, to say she was not coming in because she had problems with arthritis and complications of lupus. Stacey also told Ms. Collins it was not until the 15th that Mrs. Henry called to say she needed to file a workers compensation claim because she hurt her back on the job. Ms. Collins tried to find out if Mrs. Henry had been injured on the job but could not verify whether anyone had seen Mrs. Henry moving furniture. Dr. Baylan told Ms. Collins the injury was work-related but Dr. Quiroz' office did not initially indicate the injury was work-related. When Dr. Baylan refused to forward the patient information form, Ms. Collins took that as

another "red flag," confirming her misgivings about the nature of the injury.

Dr. Baylan's affidavit states after the initial visit, and a number of times prior to the surgery, his office requested approval for workers compensation coverage, which was denied. He says even after the situation became an emergency, the carrier continued to deny coverage. As of the 16th of February, he did not believe Mrs. Henry to be in an emergency situation. He admits he refused to provide the patient information form because he believed the carrier was not entitled to it. Dr. Baylan testified the denial of coverage delayed testing which would have diagnosed Mrs. Henry's condition. He believes the delay significantly aggravated Mrs. Henry's condition and if the severity of her back problem had been known earlier, she would not have as many complications as she now suffers.[3]

Dillard apparently filed its Notice of Refusal or Disputed Claim with the Texas Workers Compensation Commission (TWCC) on February 28, 1994. The dispute has never been administratively resolved. However, Dillard has paid workers compensation benefits to Mrs. Henry and continues to do so without admitting that the claim is valid.

Dillard filed its first Motion for Summary Judgment in the trial court alleging, *inter alia*, (1) the Henrys failed to exhaust administrative remedies under the Act, (2) Dillard's denial of coverage was reasonable because the claim is questionable, and (3) the Henrys' claim is barred by the exclusive remedy provision of the Act.[4] The motion was granted and then overturned on a motion for new trial. In its second Motion for Summary Judgment, Dillard reurged its contention that the bad faith suit was barred because the Henrys failed

---

3. Even after surgery and extensive therapy, Mrs. Henry has severe pain in her back, legs and feet, loss of feeling in her lower body, severely restricted movement, urination and bowel problems, sleeping disorders and depression related to her physical problems.

4. The summary judgment motions also addressed a dispute over the impairment rating assigned to Mrs. Henry but this issue has not been raised on appeal.

to exhaust administrative remedies, and added a contention that the Act does not require pre-authorization of emergency spinal surgery procedures. At the time, the Henrys contended the fault lay in Dillard's failure to pre-authorize Mrs. Henry's emergency spinal surgery. Dillard also urged no-evidence grounds under TEX. R. CIV. P. 166a(i), including (1) no evidence of a final decision from TWCC on the underlying coverage dispute, (2) no evidence of a duty to pre-authorize emergency spinal surgery, and (3) no evidence of harm to Mrs. Henry in being required to participate in the TWCC administrative proceedings. In response, the Henrys changed their pleadings to claim the harm occurred because Dillard failed to pre-authorize the non-emergency testing and Dillard led the doctors to believe pre-authorization was necessary for the emergency spinal surgery. Dillard responded that pre-authorization *is* required for non-emergency procedures under the Act and there is no evidence that Dillard made any misrepresentations about pre-authorization for the surgery.

### Standard and Scope of Review

We review a summary judgment de novo. To prevail on summary judgment, the movant must show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Management, Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *See Weiss v. Mechanical Associated Services, Inc.,* 989 S.W.2d 120, 124 (Tex.App.-San Antonio 1999, pet. denied). When a defendant moves for summary judgment, it must negate at least one element of the plaintiff's cause of action or conclusively establish an affirmative defense. *See Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex. 1975).

In a standard summary judgment under TEX. R. CIV. P. 166a, once the movant has established a right to summary judgment, the burden shifts to the non-movant to present issues which preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Garcia v. John Hancock Variable Life Ins. Co.,* 859 S.W.2d 427, 430 (Tex.App.—San Antonio 1993, writ denied). On the other hand, TEX. R. CIV. P. 166a(i) invokes a no-evidence standard. *See Weiss,* 989 S.W.2d at 123. When a party moves for summary judgment alleging the nonmovant lacks evidence to carry its burden of proof, the nonmovant must produce some evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Weiss,* 989 S.W.2d at 123. The non-movant need not "marshal its proof;" rather it "need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i) cmt.; *Weiss,* 989 S.W.2d at 123.

A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Havner,* 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). When, as here, the trial court's judgment does not specify the grounds on which the summary judgment is granted, we may affirm on any meritorious ground presented to the trial

court. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

## Discussion

### Exhaustion of Remedies

■ The Henrys contend the exhaustion of remedies doctrine does not apply to a claim for bad faith.[5] The Henrys confuse exclusivity of remedies with exhaustion of remedies. A plaintiff need not present a bad faith claim to the TWCC because the TWCC has no authority over extra-contractual claims. *See Aranda v. Insurance Co. of North Am.*, 748 S.W.2d 210, 214 (Tex.1988). However, "as a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).

■ Dillard filed its contest to coverage stating, "Employee did not sustain an injury in the course and scope of her employment. Employee's condition did not arise out of her employment." The issue of whether Dillard owes compensation, and whether it should have approved benefits for testing and surgery at the time of Mrs. Henry's injury, is a question for the TWCC, subject to judicial review. *See Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 612 (Tex.1996). This coverage dispute has never been administratively resolved, therefore, Mrs. Henry may be barred from bringing her bad faith suit until she has exhausted the administrative procedures of the Act.

■ In *Stoker*, the Texas Supreme Court acknowledged "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim." *Stoker*, 903 S.W.2d at 341. If, by its acts, Dillard improperly prevented Mrs. Henry from receiving adequate care and that misconduct caused an injury independent from the policy claim, then *Stoker* seems to say a preliminary resolution of the underlying compensation dispute might be unnecessary.[6] *Id.; see also id.* at 343–45 (Spector, J., concurring). The question then is whether there is any evidence of misconduct that breached an independent duty and caused an independent injury.

The only evidence of the exchange between Dillard and Mrs. Henry's doctors is found in the affidavit of Dr. Baylan[7] and the testimony of Linda Collins.[8] Dr. Baylan states his office "contacted [Mrs. Henry's] workers' compensation carrier, requesting approval for coverage, which was denied.... Even after explaining the serious nature of Mrs. Henry's condition to her workers' compensation carrier, they continued to deny coverage." Ms. Collins testified she denied the workers' compensation coverage and she advised the doctors to seek whatever approval they might need from the health insurance carrier to ensure Mrs. Henry was covered on her health policy. This is no evidence that Ms. Collins or anyone else made misrepresentations to Mrs. Henry's doctors about the need for pre-authorization.

---

5. The Henrys' claims for bad faith, violation of the Insurance Code and DTPA, and conspiracy are all predicated on the allegation that Dillard mishandled the workers compensation claim. All these claims are subject to the same defenses, therefore our findings as to the bad faith claim apply to all the claims. *See Escajeda v. Cigna Ins. Co. of Tex.*, 934 S.W.2d 402, 408 (Tex.App.-Amarillo 1996, no writ); *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 282 n. 2 (Tex.App.-San Antonio 1992, writ denied).

6. Construing the Henrys' brief very liberally, this seems to be the argument the Henrys make when they assert Dillard made misrep-

resentations leading the doctors to believe pre-authorization was necessary for Mrs. Henry's emergency treatment.

7. Dillard objected to much of the evidence in Baylan's affidavit but there is no record the trial judge ruled on those objections or excluded any part of the affidavit.

8. Mrs. Henry was in severe pain and on large doses of pain medication. She has no personal knowledge of what was said or done by the doctors or the adjuster with regard to her claim.

Because there is no evidence of misconduct by Dillard that breached an independent duty and caused an independent injury, the issue is simply whether Dillard denied the claim in bad faith. If Mrs. Henry is not entitled to coverage, then no bad faith claim exists. The Henrys urge that genuine issues of material fact preclude summary judgment.[9] All of the factual issues raised by the Henrys go to the question of whether Mrs. Henry was entitled to workers compensation coverage, and therefore, whether Dillard was wrong when it denied the claim and refused to authorize testing and surgery. Only the TWCC is authorized to resolve these factual issues related to coverage. *See Saenz,* 925 S.W.2d at 612; *see also* Tex. Lab.Code Ann. § 408.025(d).

### *Conclusion*

We hold Mrs. Henry was required to submit the coverage dispute to the TWCC and exhaust her administrative remedies before bringing her bad faith suit.[10] Because she did not, we affirm the trial court judgment.

---

**9.** From our reading of the brief, it appears the Henrys assert the following fact issues: (1) Dillard knew or should have known there was no reasonable basis for denying or delaying coverage, (2) Dillard demanded the patient information form, to which it was not entitled, before it would authorize coverage, (3) Dillard's assertion that the claim is questionable precludes summary judgment, and (6) Dillard's failure to timely file its notice of refusal precludes denial of the claim.

**10.** The Henrys argue, in a single sentence without any briefing, that since Dillard is paying benefits, it must have conceded coverage. In fact, voluntary payment of benefits by the carrier is not an admission or evidence that the claim is valid. *See Hartford Acc. & Indem. Co. v. Hale,* 400 S.W.2d 310, 313 (Tex.1966).