**In re R.O.C. Pretrial.**

**No. 04–01–00404–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 14, 2004.

Richard C. Jaramillo, Law Offices of Richard Jaramillo & Associates, P.C., Dallas, TX, for Appellant.

Jacqueline M. Stroh, Sharon E. Callaway, Crofts & Callaway, P.C., San Antonio, TX, Jeffrey R. Parsons, Allyson L. Mihalick, James E. Smith, Beirne, Maynard & Parsons, L.L.P., Houston, TX, Cathleen M. Stryker, Ball & Weed, P.C., San Antonio, TX, Robert Q. Keith, Peter K. Taaffe, Keith & Weber, P.C., Johnson City, TX, Wm. Stephen Boyd, Worsham, Forsythe & Woolridge, Dallas, TX, Donald F. Martin, Blackwell, Sanders, Peper & Martin, Overland Park, KS, Jorge E. Canseco, Clemens & Spencer, P.C., R. Laurence Macon, Akim, Gump, Strauss, Hauer & Feld, L.L.P., Charles L. Smith, Jenkens & Gilchrist, San Antonio, TX, Gregg R. Brown, Germer, Bernsen, Gertz, Beaman & Brown, L.L.P., Austin, TX, John R. Robinson, Brown McCarroll, L.L.P., Dallas, TX, Kent Adams, Adams & Coffey, P.C., Beaumont, TX, Robert G. Newman, Rosemarie Kanusky, Lisa Horvath Shub, Fulbright & Jaworski L.L.P., Stephen E. Walraven, Shaddox, Compere, Walraven & Good, P.C., San Antonio, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

In this products liability case, appellants allege they contracted asbestosis or silicosis as a result of exposure to asbestos or silica in the course of their employment at the Comanche Peak Steam Electric Station (CP) or the South Texas Nuclear Power Plant (STP). The trial court granted no-evidence motions against all appellants and in favor of all defendants, appellees herein. We affirm the judgment of the trial court.

### Background and Procedural History

Appellants claim that paints and other coating substances used in the construction of CP and STP contained asbestos or silica, which was released into the air when the product was sprayed or when it was sanded or ground off the surface to which it had been applied. Appellants allege they were not provided with safety equipment to prevent them from inhaling the asbestos or silica dust that was released into the air. They brought claims against the manufacturers and suppliers of the various products, as well as various premises owners, contractors, and employers.

The case originated as a number of individual lawsuits filed between 1989 and 1996. The first lawsuits were designated as complex and assigned to a single judge in 1995. In 2000, with numerous plaintiffs and defendants having been dropped or dismissed from the suits, all remaining plaintiffs and claims were consolidated into a single suit designated as *In re R.O.C. Pretrial.* The first motion for summary judgment at issue in this appeal involved just three plaintiffs, Flanagin, Flores and Moorefield, and all plaintiffs whose claims were derivative of those three (family members). The first summary judgment motion was filed February 8, 2000. The second motion for summary judgment addressing all the remaining plaintiffs was filed November 16, 2000.

In their no-evidence motions for summary judgment, defendant appellees asserted that the plaintiff appellants failed to

produce evidence of causation or that they had suffered a reliably diagnosed injury attributable to the products in question. When appellants responded with affidavits and expert affidavits, defendant appellees objected to the expert testimony as unreliable. Following *Robinson* hearings on the experts' affidavits, the trial court sustained the defendant appellees' objections and then granted the motions for summary judgment.[1]

On appeal, appellants complain:

(1) the trial court improperly denied their motions for continuance and for additional limited discovery to respond to the motions for summary judgment;

(2) the trial court misapplied *Robinson* and *Gammill* to exclude the testimony of appellants' experts; and

(3) the trial court erred in granting the summary judgments because even in the absence of the excluded testimony, the appellants presented sufficient evidence to raise an issue of material fact as to each of the elements of their cause of action.[2]

### A. *Continuance or Further Discovery*

■ We review the trial court's decision to deny a continuance or further discovery to respond to a no-evidence motion for summary judgment under an abuse of discretion standard. *See Martinez v. City of San Antonio,* 40 S.W.3d 587, 591 (Tex. App.-San Antonio 2001, pet. denied) (find-

ing five years adequate although discovery was not complete); *Specialty Retailers, Inc. v. Fuqua,* 29 S.W.3d 140, 146 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (finding sixteen months adequate time for discovery prior to a no-evidence motion); *Dickson Constr., Inc. v. Fidelity & Deposit Co. of Md.,* 5 S.W.3d 353, 356–57 (Tex.App.-Texarkana 1999, pet. denied) (finding four years adequate time for discovery prior to a no-evidence motion). In determining whether adequate time for discovery has passed, we examine: (1) the nature of the case; (2) the nature of evidence necessary to controvert the no-evidence motion; (3) the length of time the case was active; (4) the amount of time the no-evidence motion had been on file; (5) whether the movant had requested stricter deadlines for discovery; (6) the amount of discovery already conducted; and (7) whether the discovery deadlines in place were specific or vague. *Martinez,* 40 S.W.3d at 591; *Specialty Retailers,* 29 S.W.3d at 145; *Dickson Constr.,* 5 S.W.3d at 356.

■ The cases in this appeal had been on file no less than five years before the motions for summary judgment were filed. Appellants assert they were not given adequate opportunity for discovery because the first plaintiffs to be diagnosed with asbestosis or silicosis were only diagnosed in April 2000, after the first motion for summary judgment was filed. However, as early as 1995, appellants' former coun-

---

1. There was no live testimony by the experts. The hearing on the first motion consisted of the attorneys' arguments for or against the motions and accompanying affidavits. The appellants' counsel did not appear at the second hearing, and the trial court granted the objections and consequently the motion for summary judgment.

2. Appellants also suggest the appellees converted their no-evidence motions into tradi-

tional summary judgment motions by attaching evidence. This issue was not raised in the trial court. Additionally, the only evidence attached was evidence of discovery designed to meet the defendants' burden to show enough time for discovery had passed for a no-evidence motion to be appropriate. This type of evidence does not alter the nature of the no-evidence motion.

sel had characterized the work place as asbestos-laden. Defendant appellees had produced hundreds of product MSDS sheets showing product components including asbestos and silica ingredients, some of which were attached to appellants' responses to the motions for summary judgment.

Appellants complain they needed additional discovery about what products were used at the worksite, the periods of time the products were used, and the defendants who supplied each product. However, the record shows appellants already had substantial evidence of asbestos and silica exposure. As discussed further in this opinion, the deficiency in the appellants' case lies in their failure to prove that the type of asbestos or silica to which the appellants were exposed was in a form that causes asbestosis or silicosis or to prove an accurate diagnosis of asbestosis or silicosis. They do not explain how the requested discovery would assist in proving those elements of the claim. *See Klager v. Worthing*, 966 S.W.2d 77, 80 (Tex. App.-San Antonio 1996, no writ); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994) (failure to show why discovery is needed waives the issue).

■ Finally, the record shows the first summary judgment motion was on file for three months before the appellants filed a motion for further discovery, and the second motion for summary judgment, filed eight months later and addressing the same deficiencies as the first motion, had been on file for two months before the appellants filed a motion for further discovery. The trial court may deny further discovery if a party has been dilatory in its request. *See Esquivel v. Mapelli Meat*

*Packing Co.*, 932 S.W.2d 612, 616 (Tex. App.-San Antonio 1996, writ denied). For these reasons, the trial court did not abuse its discretion in denying a continuance and further discovery.

### B. Waiver

■ In their opening brief, appellants specifically name only four of the potential appellees: Ameron, Inc., Imperial Coatings, Carboline, and Tnemec. The other potential appellees are not named at all: Texas Municipal Power Company, TXU Electric Company f/k/a Texas Utilities Electric Company, Fluor Daniel, Inc., General Signal Industries, Inc., General Signal Corporation f/k/a Ceilcote Company, Inc., H.B. Zachry Company a/k/a Zachary Construction Company, Ebasco Construction, Inc., Ebasco Engineering and Construction, Inc., and Ebasco Services, Inc. Instead, appellants refer to the appellees generically as "various product manufacturers/suppliers ('Manufacturer Defendants'), various contractors and/or premises owner defendants ('Owner/Contractor Defendants') and former employers ('Employer Defendants')."

With the exception of the four appellees that are discussed by name, appellants' brief gives no clue as to what category the other defendant appellees fall within or what actionable conduct they allegedly committed.[3] Even after the appellees pointed out this glaring omission, the appellants' reply brief does not argue that appellants presented summary judgment evidence sufficient to raise a genuine issue of fact as to these appellees. Rather, appellants claim the summary judgment was improperly granted as to the unnamed appellees because the trial court failed to

---

3. There is a cite to the record—a general reference to 689 pages in volume one and 4421 pages in volume 5 of the clerk's record. This court is not required to search 5000 pages of record to determine the relationship of the parties and the allegations made against them.

abate or continue the summary judgment proceedings and allow appellants time for additional discovery. As we have already discussed, the trial court did not err in denying the appellants' motion for continuance or for additional discovery. By failing to address any other issue related to the unnamed appellees, appellants have waived any other error. *See Kagan–Edelman Enter. v. Bond,* 20 S.W.3d 706, 707 (Tex.2000). We affirm the trial court's order granting summary judgment in favor of appellees, Texas Municipal Power Company, TXU Electric Company f/k/a Texas Utilities Electric Company, Fluor Daniel, Inc., General Signal Industries, Inc., General Signal Corporation f/k/a Ceilcote Company. Inc., H.B. Zachry Company a/k/a Zachary Construction Company, Ebasco Construction, Inc., Ebasco Engineering and Construction, Inc., and Ebasco Services, Inc.

## C. The Motions for Summary Judgment
### Standard of Review

No-evidence motions for summary judgment are governed by Texas Rule of Civil Procedure 166a(i). To overcome a no-evidence motion, the nonmovant must produce some evidence raising a genuine issue of material fact as to each element of its cause of action. *Weiss v. Mech. Associated Servs.,* 989 S.W.2d 120, 123 (Tex. App.-San Antonio 1999, pet. denied). A no-evidence summary judgment is improper when the nonmovant demonstrates more than a scintilla of probative evidence. *Benitz v. Gould Group,* 27 S.W.3d 109, 113 (Tex.App.-San Antonio 2000, no pet.). However, the nonmovant may not rely on evidence that is inadmissible or amounts to no more than a scintilla. *Weiss,* 989 S.W.2d at 124. To determine whether the no-evidence summary judgment was proper, we review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence

and inferences. *Id.* When, as in this case, the judgment omits the grounds for the no-evidence summary judgment, we will affirm on any meritorious theory advanced in the motion. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

■ The defendant appellees' motions for summary judgment focus on the lack of evidence of causation, as well as the speculative nature of the appellants' diagnoses of asbestosis and silicosis. Causation cannot be established by mere speculation; therefore, to overcome the no-evidence motion, appellants must have presented more than a scintilla of evidence that asbestos or silica dispersed during activities at CP or STP caused their injuries. *See, e.g., Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995); *Martinez,* 40 S.W.3d at 591; *Ward v. Northeast Tex. Farmers Co-op. Elevator,* 909 S.W.2d 143, 150 (Tex.App.-Texarkana 1995, writ denied). Additionally, appellants were required to prove their diagnosis was based on reliable evidence. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995).

■ To meet their burden to produce some evidence of causation and a compensable injury, appellants attempted to rely on expert testimony, which was excluded by the trial court. Admissibility of expert testimony is governed by the Texas Rules of Evidence and the *Robinson* factors. TEX.R. EVID. 702, 705(c); *Robinson,* 923 S.W.2d at 556. We may not disturb the trial court's exclusion of expert testimony absent an abuse of discretion. *Robinson,* 923 S.W.2d at 558. The test for abuse of discretion is whether the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* We will not find an abuse of discretion simply because we would have ruled differently in the same circumstances or if the

trial court committed a "mere error in judgment." *Id.*

In this case, defendant appellees made their primary challenge to the reliability of the expert testimony. *See Robinson,* 923 S.W.2d at 556 (in addition to demonstrating an expert witness is qualified to testify, the proponent must also demonstrate the expert's testimony is based on a reliable foundation). This court has held that when "an expert's testimony lacks a reliable scientific basis, its admission by the trial court constitutes an abuse of discretion." *Ford Motor Co. v. Aguiniga,* 9 S.W.3d 252, 262 (Tex.App.-San Antonio 1999, pet. denied). Further, we have held an expert's failure to rule out alternative causes of injury renders the opinion unreliable. *Weiss,* 989 S.W.2d at 125. Our Texas supreme court has described how the foundation of an expert opinion can be unreliable:

> If the foundational data underlying opinion testimony are unreliable, ... any opinion drawn from that data is likewise unreliable. Further, an expert's testimony is unreliable even when the underlying data are sound if the expert draws conclusions from that data based on flawed methodology. A flaw in the expert's reasoning from the data may render reliance on a study unreasonable and render the inferences drawn therefrom dubious. Under that circumstance, the expert's scientific testimony is unreliable and, legally, no evidence.

*Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 714 (Tex.1997).

Two additional considerations govern determinations of reliability. Where the offered testimony is purely scientific, the supreme court has provided a non-exclusive list of factors to consider. *See Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 774 (Tex.App.-Corpus Christi 1999, pet. denied) (citing *Robinson,* 923 S.W.2d at 556). These factors include: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *Id.* at 774. Where application of the *Robinson* factors proves unavailing, the court must consider whether "there is simply too great an analytical gap between the data and the opinion proffered." *Id.* at 774 (citing *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 727 (Tex.1998)). The trial court need not determine "whether an expert's conclusions are correct, but only whether the analysis used to reach them is reliable." *Gammill,* 972 S.W.2d at 728.

### Discussion

In this case, the defendant appellees' objections to the summary judgment evidence fall into two categories:

(1) there is no expert evidence that the asbestos or silica that may have been contained in products used in the appellants' workplace was in a form that causes asbestosis or silicosis; and

(2) the diagnosis of asbestosis or silicosis is unreliable because the experts worked backward from the alleged exposure and assumed causation rather than independently diagnosing the disease.

Appellees respond that it is well known that asbestosis is a compensable injury and

that asbestos is the only cause of asbestosis. However, as appellees point out, the type of asbestos that causes asbestosis is "friable" asbestos, that is, asbestos fibers that are capable of being inhaled and make their way into the lung tissue, ultimately interfering with the patient's ability to breathe. *See Liddell v. Bd. of Educ. of the City of St. Louis, Mo.*, 771 F.Supp. 1496, 1500 (E.D.Mo.1991); *Wilkerson v. Armstrong World Indus., Inc.*, 1990 WL 138586, at *3 (D.N.J., Sept.19, 1990) (not designated for publication); *Nogan v. GAF Corp.*, 1989 WL 161541, at *3 (M.D.Pa., May 22, 1989) (not designated for publication).

The asbestos and silica in this case are ingredients in paint or other liquid coating products. Appellants contend they were exposed to asbestos or silica when these paints or coatings were sprayed, sanded, or ground but there is no expert testimony that spraying, sanding, or grinding a liquid paint or coating produces friable asbestos fibers likely to cause asbestosis. Similarly, the type of silica that causes silicosis is crystalline silica. The evidence shows the products in this case contained amorphous silica. There is no evidence that amorphous silica causes silicosis or that grinding and sanding the paint and coatings releases a form of silica that is capable of causing injury. We hold that appellants never proved an "exposure" to a form of asbestos or silica that would cause injury. *See Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1145 (5th Cir.1985) (each product must be considered to determine whether it poses a risk of releasing airborne concentrations of fiber).

Appellants argue that because asbestosis is a mature tort, a *Robinson* analysis should not apply. Appellants contend that

because the MSDS sheets show some products in the workplace contained asbestos or silica, the appellants do not have to show evidence of causation other than the fact that they worked in the vicinity of these products and they have been diagnosed with asbestos or silica related diseases. The cases cited by appellants do not support such a broad conclusion.

For example, appellants rely on a statement by the Corpus Christi court of appeals that "there is no dispute that [plaintiff's] condition was caused by inhalation of asbestos fibers." *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.-Corpus Christi 1999, no pet.). However, *Walters* is not a causation case—the court was not presented with that issue. Instead, the inquiry in *Walters* was whether the asbestos product in question was unreasonably dangerous at the time it was manufactured given the state of scientific knowledge of the dangers of asbestos at that time, and whether it was marketed without adequate warnings. The general statement in *Walters* cannot logically be used to support the broad proposition that a *Robinson* analysis is never applicable to asbestosis cases.

Similarly, the appellants' reliance on *In re Ethyl* is taken out of context. *Ethyl*, like *Walters*, is not a case where diagnosis or exposure was at issue. *See In re Ethyl*, 975 S.W.2d 606 (Tex.1998). In *Ethyl*, the supreme court considered whether multiple cases of asbestosis should be tried together when the periods and type of exposure, the worksites, and the knowledge of the defendant employers were all different for the many plaintiffs. The court noted that each product presented different risk of exposure,[4] the very point

---

**4.** "In some products, the asbestos is embedded and fibers are not likely to become loose or airborne. In other products, the asbestos is friable. This, of course, bears on the extent and intensity of exposure to asbestos." *Id.* at 617.

defendant appellees make in this case. *Id.* at 617.[5]

██ In this case, each of the appellants' affidavits follows the same general pattern. The plaintiff testifies that he or she worked for a certain period of time at CP or STP. During that time, some sort of grinding or scraping was going on all the time, so that almost all the time, the air inside the towers was so thick you could not see from one side to the other. The plaintiff gives a list of products to which he or she may have been exposed, based on evidence that these products were being shipped to the jobsites for use during the applicable periods.[6] "A fundamental principle of traditional products liability law requires the plaintiff to prove that the defendants supplied the product which caused the injury." *Celotex Corp. v. Tate,* 797 S.W.2d 197, 203 (Tex.App.-Corpus Christi 1990, writ dism'd by agmt.). Appellants had the initial burden to show that they were exposed to asbestos and/or silica in a form that is capable of causing injury from the appellees' products. They failed to meet this burden.

In the alternative, appellants contend that the diagnosis of asbestosis or silicosis is sufficient evidence that they were exposed to injurious products. The physicians' affidavits state that the appellants have symptoms and lung x-rays consistent with asbestos or silica related disease and accept the appellants' conclusion that their exposure was sufficient to cause disease. The experts do not say how they calculated the amount of exposure nor do they question whether the dust inhaled by the appellants contained friable asbestos.

Appellants' own expert, Dr. Kalnas, wrote that in the absence of a biopsy which shows actual particles in the tissue, one of the elements in diagnosing asbestosis is a reliable history of exposure. Yet appellants' doctors accepted the appellants' statements that they were exposed to asbestos and/or silica in a form and concentration that can cause injury, and combined with symptoms and x-rays that may be consistent with asbestosis or silicosis, diagnosed the appellants accordingly. The diagnoses are circular, from an assumption of exposure to a diagnosis based on that assumption. Additionally, none of the experts made any effort to rule out other possible causes of the appellants' conditions. This is important given the many solvents and other potentially injurious substances to which these plaintiffs allege they were exposed. Because appellants failed to show that they were exposed to an injurious form of asbestos or silica or that they have been reliably diagnosed with asbestosis or silicosis, we affirm the trial court's judgment.[7] *See Frias v. At-*

---

5. In yet another case cited by appellants, the issue was not whether expert testimony in asbestos cases should be tested under *Robinson* and *Gammill,* but whether a plaintiff who had previously recovered for asbestosis could recover years later from a different defendant for mesothelioma, a separate and distinct asbestos-related disease. *See Pustejovsky v. Rapid–American Corp.,* 35 S.W.3d 643, 654 (Tex.2000).

6. In some cases, a plaintiff states that he or she actually worked with or around specific products. For example, one appellant stated he worked with asbestos blankets that had been cut, presumably producing the type of fibers that can cause asbestosis. However, it does not appear these products were produced by any of the manufacturers in this appeal.

7. Appellants rely heavily on *Borel,* a case out of the Fifth Circuit, and *Tate,* out of the Corpus Christi court of appeals. *See Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Celotex Corp. v. Tate,* 797 S.W.2d 197 (Tex. App.-Corpus Christi 1990, writ dism'd by agmt.). In both cases, there was no question

*lantic Richfield Co.,* 104 S.W.3d 925, 928–31(Tex. App.-Houston [14th Dist.] 2003, no pet. h.).

## Conclusion

Because they failed to brief or cite to record evidence in support of their allegations against Texas Municipal Power Company, TXU Electric Company f/k/a Texas Utilities Electric Company, Fluor Daniel, Inc., General Signal Industries, Inc., General Signal Corporation f/k/a Ceilcote Company. Inc., H.B. Zachry Company a/k/a Zachary Construction Company, Ebasco Construction, Inc., Ebasco Engineering and Construction, Inc., and Ebasco Services, Inc., we hold appellants waived error as to those appellees. We hold the trial court did not err in denying appellants' motions for continuance or for further discovery prior to ruling on the no-evidence motions for summary judgment. Further, the trial court did not abuse its discretion in excluding the testimony of appellants' experts. Without this testimony, appellants failed to bring forward some evidence of causation or a reliably diagnosed injury. For these reasons, we hold the trial court did not err in granting the motions for summary judgment. The judgment of the trial court is affirmed. Appellees shall recover their costs of appeal from the appellants.

---

as to whether the plaintiff had been exposed to asbestos and properly diagnosed with asbestosis. However, the plaintiff had been exposed to products from several defendants. The courts stated that in such a case, where the conduct of more than one defendant combines to cause an injury, the plaintiff need not show what portion of the injury was caused by each defendant; the burden for apportionment falls upon the defendants. *See Tate,* 797 S.W.2d at 204. Thus, if the appellants have shown that each products defendant supplied a product that was capable of causing injury, each appellant does not have to prove how much of the injury was caused by each defendant. In this case, appellants failed to meet their initial burden to show that they were exposed to injurious products produced by any of these appellees.