COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-397-CV

TAMMY POTEET AND APPELLANTS

CHELCEE POTEET

V.

ROGER KAISER, SANDY KAISER, APPELLEES

FARMERS GROUP, INC.

D/B/A FARMERS INSURANCE GROUP,

FARMERS INSURANCE EXCHANGE,

AND FIRE INSURANCE EXCHANGE

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM
 
OPINION
(footnote: 1)

------------

Appellants Tammy and Chelcee Poteet (“Appellants”) appeal the trial court’s granting of Appellees Roger and Sandy Kaiser’s (“Kaisers”) no-evidence motion for summary judgment.  We affirm.  Appellants also appeal the trial court’s granting of Appellee Farmers Group, Inc.’s (“Farmers Group”) traditional and no-evidence motions for summary judgment.  We affirm in part and reverse and remand in part. 

BACKGROUND 

Appellants sued the Kaisers and Farmers Group, Appellants’ insurer,
(footnote: 2) as a result of damages allegedly caused by the November 2002 discharge of black smoke and soot from the central air-conditioning and heating system in the home they purchased from the Kaisers in May 2002.

Before purchasing the home, Appellants hired an independent inspector, who found large amounts of rust debris in the burner chambers of the central heating units and reported that a Heating Ventilation and Air Conditioning (“HVAC”) mechanic should clean and inspect it, and Appellants made the completion of this cleaning and inspection a condition of sale.  Appellants claim that the Kaisers assured them that they had it cleaned but that Mr. Kaiser actually cleaned the unit himself instead of hiring an HVAC professional.  After the November 2002 discharge, Appellants hired a local air-conditioning repair company to check the furnace; the technician, Bobby Joe Swafford, informed them that both heat exchanger units (
i.e.
, furnaces) had cracks and that they should be replaced, which he later did for Appellants 
under their home warranty.

Appellants reported the incident to Farmers Group, who had the home inspected and 
initially determined, 
based on the information it had gathered at that time,
 that
 the discharge of soot was produced by the heat exchangers. Therefore, Farmers Group concluded that the soot had
 been caused by a covered event: “sudden and accidental damage from smoke.”
 Farmers Group began funding remediation and repair, including Appellants’ temporary relocation, carpet replacement, repainting the ceiling, and cleaning the home’s contents.

Appellants were dissatisfied with Farmers Group’s remediation efforts and claimed that the soot continued to cause them respiratory problems and that the home remained uninhabitable.  Appellants allege that Farmers Group failed to hire a Certified Industrial Hygienist (“CIH”) to investigate, develop a remediation plan, and confirm that the soot had been cleaned up.  Additionally, Appellants claim that Farmers Group informed Appellants that they had to pay for tests on the indoor air quality of the home if they wanted them.

Appellants hired a CIH, Robert Miller,
 to investigate whether soot was actually present in the household.  While Miller
 inspected the levels of soot, he did not perform tests to determine the cause of the soot.  His test results showed that soot was still present in the home.

After testing Appellants’ house, Miller wrote a letter to Appellants’ counsel, Denise Martinez, recommending that Appellants not live in the house because he had determined that the house was unsafe.  In an attempt to clarify certain allegations by Appellant Tammy Poteet (“Tammy”) regarding ongoing damage and additional living expenses, Farmers Group requested an Examination Under Oath (“EUO”), as permitted by the insurance contract. Martinez argued that the EUO request was untimely but eventually advised Tammy to submit to the request.  
Unable to agree with Appellants on an amount of any additional damages, Farmers Group invoked the appraisal provision of the insurance contract and later sued Appellant Tammy Poteet, as provided for in the provision so that a district court could appoint an umpire to facilitate the process.  The suit to appoint an umpire was dismissed nearly one year and eight months later for want of prosecution.
(footnote: 3)
 In May 2004, Appellants sued the Kaisers for fraud, negligent misrepresentation, deceptive trade practices, and fraud in a real estate transaction.  Appellants also sued Farmers Group for insurance code violations, deceptive trade practices, negligent misrepresentations, breach of contract, and breach of the duty of good faith and fair dealing.  The Kaisers filed a no-evidence motion for summary judgment, which the trial court granted.  Farmers Group filed traditional and no-evidence summary judgment motions and a motion to strike Appellants’ expert Miller. The trial court granted Farmers Group’s motion to strike Miller in part as well as Farmers Group’s combined motion for summary judgment.

KAISERS’ NO-EVIDENCE SUMMARY JUDGMENT

In their first issue, Appellants argue that the trial court erred in granting the Kaisers’ no-evidence motion for summary judgment.  The Kaisers asserted that Appellants had no evidence to prove that the furnaces caused Appellants’ injuries.  The Kaisers stated that because Appellants presented no evidence that the furnaces caused any damage, Appellants had no evidence that the Kaisers’ misrepresentations, if any, caused damage; thus, all of Appellants’ causes of action must fail.

Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard
,
 P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant
,
 
73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  
Sudan v. Sudan
, 199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).  Less than a scintilla of evidence exists when the evidence is so weak that it does nothing more than create a mere surmise or suspicion of a fact.  
Kindred v. Con/Chem
,
 Inc.,
 650 S.W.2d 61, 63 (Tex. 1983).

Causation

We must determine whether Appellants’ summary judgment evidence provided more than a scintilla of evidence to create a fact issue on whether the furnaces caused the alleged damage to Appellants’ home.  The scintilla test cannot be met by producing a bare expert opinion.  
Merrell Dow Pharm., Inc. v. Havner
, 953 S.W.2d 706, 712 (Tex. 1997);
 
Weiss v. Mech. Assoc. Servs., Inc.
, 989 S.W.2d 120, 125 (Tex. App.—San Antonio 1999, pet. denied).
 
 The no-evidence standard requires more than looking only to the words that appear in the transcript of the testimony; we must look to see whether there is in fact some evidence.  
See Havner
, 953 S.W.2d at 712 (citing 
Schaefer v. Tex. Employers’ Ins. Ass’n
, 612 S.W.2d 199, 205 (Tex. 1980)).  We must also delve into expert opinion to determine reliability. 
 
See
 
Havner
, 953 S.W.2d at 712; 
Weiss
,
 
989 S.W.2d at 125.  If there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes within reasonable certainty.  
Havner,
 953 S.W.2d at 720; 
Weiss
, 989 S.W.2d at 125.  While causation may be proved by expert testimony, the probability about which the expert testifies must be more than coincidence for the case to reach a jury.  
Schaefer
, 612 S.W.2d at 202; 
Weiss
,
 
989 S.W.2d at 125.

Proof other than expert testimony will constitute some evidence of causation only when a layperson’s general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition.  
Mack Trucks, Inc. v. Tamez
, 206 S.W.3d 572, 583 (Tex. 2006).  Expert testimony is required when an issue involves matters beyond jurors’ common understanding.  
Id
.

Appellants argue that they produced more than a scintilla of probative evidence that the furnaces caused their damages based on the affidavit of HVAC technician Bobby Joe Swafford, the property claims investigation log produced by Farmers Group, excerpts from the deposition testimony of Tammy, and excerpts from the deposition testimony of Appellants’ expert Miller.

1. Affidavit of Bobby Joe Swafford

Swafford works for Arctic Cooling & Heating as an air conditioning and heating technician.  He serviced Appellants’ heating and air conditioning units and inspected them for leaks.  Swafford also checked carbon monoxide levels in Appellants’ house after running the heating units and found 10 parts per million of carbon monoxide.
(footnote: 4)  In his affidavit, Swafford states that he found leaks in both of the Appellants’ central heating units.  He stated further that he “believe[d] that the elevated carbon monoxide levels and discoloration of the carpets were a direct result of the leaking heat exchangers.”

To the extent that Swafford testified as a nonexpert, we hold that the combustion process of a heating furnace is a matter beyond a juror’s common understanding; thus, a determination of causation in this case requires expert testimony.  
See id
.
 
 And to the extent that Swafford testified as an expert on the heating system—an issue not brought before the trial court—his conclusions must be based on more than a belief, as a bare expert opinion does not satisfy the scintilla test.  
See Havner
, 953 S.W.2d at 711; 
Weiss
,
 
989 S.W.2d at 125.  While Swafford mentions discoloration of carpet, he never mentions soot or how any soot resulted from the cracked heat exchangers.  Thus, he failed to establish the necessary links between the holes in the heat exchangers and the resulting process that allegedly caused the damages complained of by Appellants.  Appellants cannot defeat a no-evidence summary judgment on Swafford’s bare opinion regarding the cause of the injury.  For these reasons, we conclude that Swafford’s affidavit does not raise a genuine issue of material fact on causation.

2. Farmers Group Investigation Log 

The Kaisers objected to the use of the investigation log as summary judgment evidence, asserting that it contained double hearsay, but the trial court never ruled on the objections. Therefore, without a court order sustaining the objection, the investigation log is proper summary judgment evidence.  
See Stewart v. Sanmina Texas L.P.
, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.).

The investigation log consists of secondhand technician reports regarding the situation at Appellants’ house as recorded by Greg Simms, an employee of Farmers Group.  The recount of Swafford’s observations in the investigation log provides somewhat more detail than Swafford’s sworn affidavit about the relationship between the cracks in the heat exchangers and the resulting soot; it states that the fan sucked the flame into the duct causing soot.  However, there is no indication in the secondhand account that Swafford actually saw the flame sucked into the duct or whether this was an assumption on his part.  Swafford failed to state whether there was soot inside the heat exchangers that would support this theory or whether he even looked inside the heat exchangers at all.  In other words, the investigation log provides little actual evidence of what occurred in Swafford’s inspection and is therefore unreliable.  Thus, we hold that this was no evidence as to causation.

3.
 
Deposition Testimony of Appellant Tammy Poteet

In their response, Appellants relied on Tammy’s affidavit to the extent that she claimed she saw a “big ball of black smoke” come out of the vent when the heater was running.  She also described in her deposition the physical conditions—headaches, nausea, eyes burning—of the family members that night.  However, the issue here is what caused the soot, not whether it caused any damage.  And because the combustion process of a heating furnace is a condition that involves matters beyond jurors’ common understanding, expert testimony is required to determine causation in this case.  
See
 
Tamez
, 206 S.W.3d at 583.  Thus, this circumstantial evidence is not enough to preclude summary judgment.

4. Deposition Testimony of Robert Miller, Certified Industrial Hygienist 

Appellants hired Miller to inspect their home and test for soot.  In support of their response, Appellants attached only excerpts of Miller’s deposition.  Miller admitted in his deposition that by testing and observing Appellants’ house, his objective was to determine the presence of soot, not the cause of it.  Further, Miller admitted that he did not perform a detailed examination of the reported cracks in the heat exchangers nor did he look for soot inside them.  Thus, the evidence fails to show that Miller ever investigated whether there was in fact a combustion incident.  After testing the house, Miller concluded that there was soot present in the house and opined that the cause of the soot was the home’s furnace and heating system.  He based his determination on Tammy’s observations and the extent of his finding of soot in the house.

Additionally, Miller stated that there were multiple sources of the soot and that based on his testing for the presence of soot and conversations with Tammy, he thought the primary source was the heating system.  However, because Miller conducted no tests to determine the cause of the soot, based his opinion on observations of another, and further, because he could not rule out other potential sources that he admitted probably caused the soot, we hold that his opinion as to the source of the soot is no evidence.
(footnote: 5)
 Although Appellants might be able to speculate on the source of the soot through circumstantial evidence, he is precluded from stacking inference upon inference in forming his opinion of causation.  
See Weiss
,
 
989 S.W.2d at 126.  Furthermore, Miller’s testimony in support of Appellants’ response is devalued because he was unable to rule out other potential causes of the soot that he admitted probably caused the damage.  
See id
.

Conclusion

We hold that Appellants failed to present evidence to raise a fact issue that the source of the soot was a faulty furnace system; therefore, they failed to present evidence that false representations, if any, by the Kaisers regarding the cleaning of the HVAC units caused Appellants’ damages.  
See 
Tex. Bus. & Com. Code 
§ 17.50 (Vernon Supp. 2007) (requiring that false, misleading, or deceptive acts were the producing cause of the injury);
 Johnson & Johnson Med., Inc. v. Sanchez
, 924 S.W.2d 925, 929–30 (Tex. 1996) (stating that an essential element of common law fraud is that a false representation caused injury); 
Fed. Land Bank Ass’n of Tyler v. Sloane
, 825 S.W.2d 439, 442 (Tex. 1991) (stating that an essential element of negligent misrepresentation is that false information caused pecuniary loss);
 Robbins v. Capozzi
, 100 S.W.3d 18, 26 (Tex. App.—Tyler 2002, no pet.) (stating the an essential element of fraud in the real estate transaction is that a false representation caused injury).  Therefore, the trial court did not err in granting the Kaisers’ no-evidence motion for summary judgment.  Accordingly, we overrule Appellants’ first issue.

FARMERS GROUP’S NO-EVIDENCE AND TRADITIONAL SUMMARY JUDGMENTS

In their second issue, Appellants argue that the trial court erred in granting Farmers Group’s no-evidence motion for summary judgment, in which Farmers Group argued that Appellants had no evidence to support their breach of contract, negligent misrepresentation, and DTPA claims.  In their third issue, Appellants argue that the trial court erred in granting Farmers Group’s traditional motion for summary judgment, in which Farmers Group asserted that the negligent misrepresentation and DTPA claims were negated as a matter of law.

Standard of Review

We will review Farmers Group’s no-evidence summary judgment under the same standard provided in the discussion above.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Grant, 
73 S.W.3d at 215.
  To the extent we address Farmers Group’s traditional motion for summary judgment, we will conduct our review under the well established standard, which states that a defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  
IHS Cedars Treatment Ctr.
, 143 S.W.3d at 798.

Breach of Contract

Appellants assert that Farmers Group breached the insurance contract by failing to (1) timely and completely pay the claim, and repair Appellants’ home, (2) complete the appraisal process once initiated, (3) timely ask for an EUO, and (4) properly investigate.  For each allegation, Farmers Group challenged the elements of breach and damages.

1. Failure to Timely and Completely Pay the Claim, and Repair Appellants’ Home

Appellants argue that Farmers Group did not properly repair the home and further that it failed to fully pay the claim.  Farmers Group maintains that Appellants have not proved coverage, meaning that they failed to delineate which part of the loss resulted from a covered loss, if any, and which resulted from a non-covered loss.

Because the cause of the condition could have come from a combination of covered and non-covered perils, Appellants had the burden under the doctrine of concurrent causes to segregate the damages and determine which part of the damages were attributable solely to the covered peril.  
See Allison v. Fire Ins. Exchange
,
 
98 S.W.3d 227, 258 (Tex. App.—Austin 2002, pet. granted, judgm’t vacated w.r.m.); 
Wallis v. United Servs. Auto Ass’n
, 2 S.W.3d 300, 302–03 (Tex. App.—San Antonio 1999, pet. denied).  The doctrine of concurrent causation is not an affirmative defense or an avoidance issue; rather, it is a rule embodying the basic principle that the insureds are not entitled to recover under their insurance policies unless they prove the damage is covered by the policy.  
Allison
, 98 S.W.3d at 258; 
Wallis
, 2 S.W.3d at 303.  Thus, it follows that Appellants can recover damages only for a loss that is covered under the policy.  
See Allison
, 98 S.W.3d at 258; 
Wallis
, 2 S.W.3d at 303.  Because allocation is central to the claim for coverage, an insured’s failure to carry the burden of proof on allocation is fatal to the claim.  
Allison
, 98 S.W.3d at 258; 
See also Wallis
, 2 S.W.3d at 303–04.  Although a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury’s finding rests.
  State Farm Fire & Cas. Co. v. Rodriguez
, 88 S.W.3d 313, 321 (Tex. App .—San Antonio 2002, pet. denied); 
Kelly v. Travelers Lloyds of Tex. Ins. Co.
, No. 14-05-00825-CV, 2007 WL 527911, at *3 (Tex. App.—Houston [14th Dist.] February 22, 2007, no pet.).

The initial reported damage from the soot was considered a covered event under the insurance contract, labeled in the insurance policy as “sudden and accidental damage from smoke.”  However, Farmers Group now claims that non-covered perils (
i.e.
, not sudden or accidental), including candles and the fireplace could have caused or contributed to the alleged loss.

Appellants attached only excerpts from Miller’s deposition in support of its response.
(footnote: 6)  In these excerpts, Miller stated that there were multiple sources of soot and that the heat exchangers were probably the main source, basing this opinion on his discussion with Tammy and his finding of soot in the house. Miller reiterated this point when he was asked what scientific evidence he had to support his opinion that the soot was either partially or fully the result of incomplete combustion in the heat exchangers, and he stated that the opinion was based on the “history” as related to him by Tammy and the finding of soot in the house.  Miller never provided actual test results that could have definitively confirmed his opinion.
(footnote: 7)
 While Farmers Group initially determined, given the facts at that time, that the loss was covered under the insurance policy,
(footnote: 8) it now claims that Miller’s admission that he thinks that there were multiple sources shows that Appellant presented no evidence that the soot came from a covered loss or, even if the soot were a covered loss, that all of the loss would be covered.  Farmers Group further asserts that Appellants presented no evidence that Farmers Group owed any more money than it had already paid.  We conclude that the evidence presented the possibility of multiple sources of the soot, but that Appellants failed to segregate the loss between covered and non-covered events.  Thus, because Appellants have not satisfied their burden under the concurrent causes doctrine, we hold that there is no evidence that Farmers Group breached its contract with Appellants by not paying additional amounts on Appellants’ claim or by failing to make any additional repairs.

2. Failure to Complete Appraisal Process

Appellants also assert that Farmers Group breached its contract by abandoning the appraisal process once invoked because it only intended to cause further delay in the investigation process.
(footnote: 9)  There is some evidence that Farmers Group breached the appraisal provision by failing to further comply with the provision once the suit to appoint an umpire had been filed.  The evidence demonstrates that Farmers Group’s failure to participate in its own suit resulted in a dismissal of the case for want of prosecution.  As a result, an umpire was never appointed and an amount of loss was never set by the appraisers.  There is at least some evidence to raise a fact issue that by failing to follow through with the process and comply with the remaining terms of the provision, Farmers Group breached the appraisal provision, resulting in damages to Appellants, including costs and fees associated with the appraisal case.

Farmers Group argues that there is no breach because Farmers Insurance Exchange (“FIE”) issued the insurance policy but Farmers Insurance Group (“FIG”) filed the suit to appoint an umpire; thus, FIG could not breach a contract to which it was not a party.  Regardless of which entity filed the suit, the appraisal process was invoked by FIE, which participated in the process to an extent and then later abandoned it altogether.  In other words, failure to litigate the lawsuit was not the only act that constituted abandonment or breach of the appraisal provision.  FIE invoked the appraisal provision but then never set a cash value on the loss, and this inaction is an abandonment of the process by FIE, which is some evidence to raise a fact issue that Farmers Group breached the appraisal provision and caused damages to Appellants arising from the appraisal process.

Although Appellants also had the right to enforce the appraisal provision
, failing to do so does not preclude a claim for damages resulting from a breach of that provision.  
See Standard Fire Ins. Co. v. Fraiman
, 588 S.W.2d 681, 683 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref’d n.r.e.) (holding that a claim for breach of an appraisal provision was not a repudiation of the policy, but instead a breach of a procedural provision, and that the insured’s right to specifically enforce an appraisal provision did not preclude a cause of action for breach of that provision).  The policy behind an appraisal provision is to expedite claims, and to not allow a claim for damages would allow insurance companies to breach the appraisal provision without fear of consequence.  
Id
. Accordingly, we hold that the trial court erred in granting Farmers Group’s no-evidence summary judgment as to the breach of the insurance contract’s appraisal provision.
(footnote: 10)
3. Examination Under Oath

Appellants argue that Farmers Group breached the insurance contract by demanding that Tammy take an EUO past the time allowed by law and the insurance contract.  Martinez initially objected to the timeliness of the EUO request but nevertheless advised Tammy to submit to it.

In support of their argument, Appellants point out the insurance contract’s investigation guidelines. The timing guidelines in the insurance contract are very similar to those provided by the Texas Insurance Code (“Code”).
(footnote: 11)  Under the contract, Farmers had fifteen days to (1) acknowledge receipt of the claim; (2) begin any investigation of the claim; and (3) specify the information that Appellants must provide in accordance with the “Your Duties After Loss” section of the contract.  The provision goes on to state that Farmers Group may “request more information, if during the investigation of the claim such additional information is necessary.”  To understand the effect of this contract provision, we turn to case law interpreting almost identical provisions under the Code.  
See In re Foremost County Mut. Ins. Co.
, 172 S.W.3d 128, 132 (Tex. App.—Beaumont 2005, orig. proceeding) (holding that an insurance company did not waive its right to an EUO by requesting it more than fifteen days from the initial claim).

Under the plain language of the insurance contract and the Code, the insurer has the right to request additional information during the investigation, which it can choose to do in the form of an EUO.  
See id. 
 There is no requirement that the EUO request must be within fifteen days of the claim, only that the insurer must begin the investigation within fifteen days.  
See id
.

Appellants do not complain that the EUO would not have assisted Farmers Group in its investigation nor do they argue that Farmers failed to acknowledge the claim or begin investigation within fifteen days.  Appellants contend only that Farmers Group’s EUO request was untimely.  However, with no requirement that the request for an EUO come within a specified time table, the request in this case, without more, is no evidence of a breach of the insurance contract. 

4. Failure to Properly Investigate

As stated in the factual background section, Farmers Group initially paid Appellants claim by funding remediation and repair, including Appellants’ temporary relocation, carpet replacement, repainting the ceiling, and cleaning the home’s contents.  However, Appellants were dissatisfied with Farmers  Group’s investigation and claimed that their house was still contaminated with soot.  Appellants were very general with regard to this claim in their response to Farmers Group’s summary judgment, and now on appeal, it appears that Appellants’ main contention is that Farmers Group was dilatory in hiring its own Certified Industrial Hygienist (“CIH”) to inspect Appellants’ house and develop a remediation plan.

Appellants do not argue that Farmers Group altogether failed to investigate.  In fact, they attached evidence to their response showing that Farmers Group investigated the furniture and carpet multiple times and requested an EUO from Appellants as part of the investigation process.  Appellants instead contend that Farmers Group failed to properly investigate only by not hiring a CIH earlier than it did.

The insurance policy requires Farmers Group to investigate the claim, which it did, but the policy does not set out standards for the investigation.  We decline to add these terms to the contract.  
See Am. Mfrs. Mut. Ins. Co. v. Schaefer
, 124 S.W.3d 154, 162 (Tex. 2003) (stating that the court should neither rewrite nor add to the language of the insurance contact).  Likewise, Appellants provided no authority, either by expert or case precedent, of any standard of insurance investigation that would render Farmers Group’s investigation a breach of contract.  Standards for insurance investigations are available, however, and set forth in cases dealing with the duty of good faith and fair dealing.
  See State Farm Fire & Cas. Co. v. Simmons
, 963 S.W.2d 42, 47 (Tex. 1998).  Under this line of cases, it is the insurer, not the insured, that has the duty to reasonably investigate the claim.  
See id
.
 
 However, Appellants did not make a bad faith argument in their response or in their brief.
(footnote: 12)  Therefore, we hold that Appellants’ evidence regarding the time it took for Farmers Group to hire a CIH is no evidence of a breach of contract.

Negligent Misrepresentation

1. Farmers Insurance Group’s Suit to Appoint an Umpire

Appellants argue that FIG, who did not issue the insurance policy to Appellants, filed a “bogus” lawsuit to appoint an umpire as part of the appraisal process, thereby causing unnecessary delays in the investigation.  To prove a claim for negligent misrepresentation, Appellants must have presented evidence that (1) Farmers made a representation in the course of action in which Appellants had a pecuniary interest, (2) the representation was false, (3) Farmers failed to exercise reasonable care in communicating the information, and (4) Appellants suffered damages by justifiably relying on the information.  
See Sloane
, 825 S.W.2d at 442.  Farmers Group challenged the second, third, and fourth elements.

To show evidence of a false representation (element two), Appellants presented FIG’s suit to appoint an umpire.  Farmers Group maintains that FIG had no privity of contract with Appellants, but this assertion is contradicted by the petition in that suit, in which FIG stated that it had a homeowner’s policy in effect with Tammy at the time of the incident and that FIG in fact invoked the appraisal provision of that contract.  However, FIE was the Farmers Group entity that actually issued the contract and also invoked the appraisal provision.  There was some confusion over whether FIG was a business entity at all, but we hold that regardless of that determination, there is some evidence, as shown in the petition, to raise a fact issue that a representative entity of Farmers Group made false representations to Appellants.

Regarding element three, however, Appellants presented no evidence—and never even mentioned—that Farmers Group failed to exercise reasonable care in communicating the information.  Thus, the trial court properly granted Farmers Group’s no-evidence motion on this claim because Appellants failed to present evidence on at least one of the challenged elements. 
See 
Tex. R. Civ. P.
 166a(i)
.

2. Examination Under Oath

Appellants argue that Farmers Group made negligent misrepresentations by requesting and taking an alleged untimely EUO.  However, we previously held that Farmers Group made a reasonable request for an EUO during its investigation, and Appellants presented no additional evidence to support a different conclusion.  Without evidence that Farmers Group improperly requested the EUO, Appellants cannot prove that Farmers Group made any false representations regarding the EUO.  Accordingly, we hold that the trial court properly granted the no-evidence summary judgment as to this claim.  
See id
.

Deceptive Trade Practices Act

Appellants argue that, during its investigation, Farmers Group violated the laundry list and unconscionability provisions of the DTPA.  
See
 
Tex. Bus. & Com. Code Ann
. §§ 17.46, .50 (Vernon Supp. 2007).

1. Section 17.46

To maintain a cause under the laundry list provisions of the DTPA, Appellants must have presented evidence that Farmers Group used or employed a false, misleading, or deceptive act or practice that is specifically enumerated in subsection (b) of section 17.46 and that Appellants relied on these acts to their detriment.  
See id
.
 
§ 17.50(a)(1).  Appellants argued that several of the enumerated misrepresentations applied to Farmers Group’s actions.
(footnote: 13)  Both Farmers Group’s no-evidence and traditional summary judgment arguments are applicable to the laundry list analysis; we will address these arguments separately.

A.  Section 17.46 – No-Evidence Analysis
 

First, Appellants argue that Farmers Group misrepresented facts as to who could take the EUO and when.  Although not specifically stated in Appellants’ brief or response, it appears from Martinez’s affidavit attached to Appellants’ response that Appellants are contending that the insurance contract was not issued by Farmers Insurance Exchange (“FIE”) and therefore FIE had no authority to request or take the EUO.  All Appellants presented as evidence to support this claim was Martinez’s statement in her affidavit that when Appellants received a copy of the insurance policy, “it was clear that Farmers Insurance Exchange did not issue the policy.”  Appellants failed to point out or present any evidence to support this theory that it was clearly not FIE that issued the policy.
(footnote: 14)  This statement is conclusory and is no evidence of a misrepresentation.

Second, Appellants claim that Farmers Group misrepresented the health dangers of Appellants’ home after it was cleaned and decontaminated.  Appellants provided no evidence as to the health conditions of the house,
(footnote: 15) and without evidence showing alleged adverse health conditions, Appellants have no claim of a misrepresentation.  In other words, Appellants cannot prove that Farmers Group misrepresented a fact because Appellants provided no evidence of that fact’s falsity.

Third, Appellants argue that Farmers Group misrepresented facts as to who could ask for an appraisal.  Appellants point to no statement or action by Farmers Group that would constitute a misrepresentation.  Additionally, because Appellants provided no evidence that someone other than FIE issued the insurance policy, they have also failed to provide evidence that someone other than FIE had the authority to invoke the appraisal provision under the policy.

In the last of their general allegations, Appellants argue that Farmers Group misrepresented its ability to clean soft goods and personal property, that Farmers would abide by the decision of an umpire, and that documents such as procedure manuals existed.  Appellants made no attempt in their response and make no attempt on appeal to point to any facts that support these broad allegations.  Because they have presented no evidence, these arguments must fail. 

Appellants further list fourteen specific representations that are taken from Tammy’s affidavit that they argue constitute actionable misrepresentations under section 17.50(a)(1).
(footnote: 16)  Because we take all evidence offered by the nonmovant as true, we will assume that Farmers Group made these representations to Appellant.  
See Crawford v. Ace Sign, Inc.
, 917 S.W.2d 12, 14 (Tex. 1996).

Six of the representations (numbers six through ten and twelve in Appellants’ brief) recount conversations with Sims and other Farmers Group representatives, in which Tammy claims the representatives refused to replace the carpet and were less than kind to Tammy throughout this process.  The representations as stated in Appellants’ response are as follows:

Greg Sims said I did not need the carpet replaced, but that it could be cleaned.  He further said that I was just trying to get new carpet.

Greg Sims said that the carpet padding did not need to be replaced because there was nothing wrong with it even though it was obvious that soot had penetrated to the carpet pad.  He told me I was uneducated and did not know what I was talking about.

Greg Sims told me I had to wait two weeks while he went on vacation before he would inspect the carpet.

I called Mr. Sims’[s] supervisor, Debbie Scrubbs, and she agreed that Mr. Sims deserved his vacation and that I would have to wait, she also said she agreed with Mr. Simm’s [sic] assessment and that I was just trying to get new carpeting.

Greg Sims insisted that my personal property was clean and that I had to take it back, but I told him that just like the carpet it was not clean.  He got “in my face” and told me I was stupid and ignorant and that I had no choice but to take the stuff back.

Greg Sims refused to return my calls, so I had Dale call him and ask him to call me.  He told me that the insurance would not pay for hotel, even though [my] house was still being cleaned.  He said everything is clean, you can go back home.  I called Debbie, Greg’s supervisor, and she told me in an angry voice that whatever Greg said she agreed with and “just deal with it.”

To the extent that the central complaint derived from these allegations is that Farmers Group misrepresented its ability to clean the carpet, we conclude that Appellants failed to produce any evidence.  Tammy admitted that Farmers Group attempted to clean the carpet and that when that attempt proved futile, Farmers Group replaced the carpet.  Therefore, Appellants have presented evidence only that Farmers Group was incorrect in its original assessment, not that it misrepresented its ability to clean the carpet.
(footnote: 17)
 In three other representations (numbers two, three, and eleven in Appellants’ brief), Appellants claim that Sims misrepresented the safety and health risks of living in the house after it was cleaned.  These representations are as follows:

Greg Sims told me that the soot was not harmful and it was safe to stay in the house.

Greg Sims told me that it was safe to stay in the house despite the fact that there were obviously problems with the heaters. 

Greg Sims said that the house posed no danger and we could stay there even though there was no carpet.

As stated above, Appellants failed to present any evidence regarding the health dangers specific to Appellants’ house or risks to Appellants by moving back into the house; thus, Appellants presented no evidence of a misrepresentation that the house was free of health risks.

In Appellants’ thirteenth listed representation, Tammy claims that Farmers Group misrepresented its duty to investigate the claim.  As stated in Tammy’s affidavit, the representation is as follows:

Greg Sims said that the insurance company does not have to test [the] home [and that the] homeowner should have [the] home tested if she wants it tested.

While this may be evidence of some misrepresentation,
(footnote: 18) it is no evidence of a laundry list violation as listed by Appellants.

B.  Section 17.46 – Traditional Summary Judgment Analysis

The last four representations (numbers one, four, five, and fourteen in Appellants’ brief) are restated breach of contract claims, most of which were discussed in the preceding sections.  The representations are as follows:

Farmers [Group’s] claims adjuster, Greg Sims, told me that my insurance would take care of everything and get my house back into the condition it was in before the soot leaked.

Greg Sims told me that my personal property and house would be cleaned up “just like new.”

Greg Sims said the fans could be cleaned without taking them down, even though I knew they could not be properly cleaned that way.  He said they were clean, but they weren’t—You could still see black stuff all over them.

The written estimates on proposals submitted to me indicated that my home would be cleaned and items replaced and/or fixed.  They were not.

These statements that Farmers breached the insurance contract by acts of nonfeasance, without more, are not proper causes of action under DTPA.  
See Crawford
, 917 S.W.2d at 14; 
Southstar Corp. v. St. Paul Surplus Linens Co.
, 42 S.W.3d 187, 194 (Tex. App.—Corpus Christi 2001, no pet.) (holding that a breach of an insurance contract claim for failing to defend insured, without more, is not actionable under the DTPA).  When the essence of a claim is that one party made certain representations that it would perform under the contract and then failed to do so, that is not in itself actionable under the DTPA.  
See Crawford
, 917 S.W.2d at 14–15.  The reasoning is that a plaintiff’s damages in these situations are not caused by the statements themselves, but rather by the defendant’s failure to act.  
See id.

Following that reasoning, Farmers Group’s representations that it would completely repair the home and recondition it to be “just like new” did not cause Appellants’ damages.  Appellants’ damages, if any, were caused by Farmers Group’s failure to perform.  Thus, Farmers Group has negated these claims as a matter of law.  
See Southstar Corp.
, 42 S.W.3d at 194 (holding that because claims were mere breach of contract claims, movant had negated DTPA claims as a matter of law).

2. Unconscionability

To maintain a cause asserting unconscionable actions under the DTPA, Appellants must have presented evidence that some unconscionable action or course of action by Farmers Group was a producing cause of Appellants’ damages.  
See 
Tex. Bus. & Com. Code Ann. 
§ 17.50(a)(3).  Under the DTPA, an “unconscionable” action or course of action is defined as an act or practice which, to a consumer’s detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.  
Tex. Bus. & Com. Code Ann. 
§ 17.45(5) (Vernon Supp. 2007).  To prove an unconscionable action or course of action, Appellants must show that Farmers Group took advantage of their lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated.  
See Bradford v. Vento
, 48 S.W.3d 749, 760 (Tex. 2001); 
Head v. U.S. Inspect DFW, Inc.
, 159 S.W.3d 731, 745 (Tex. App.—Fort Worth 2005, no pet.).  The relevant inquiry examines the entire transaction, not Farmers Group’s intent. 
 See Chastain v. Koonce
, 700 S.W.2d 579, 583 (Tex. 1985); 
Head
, 159 S.W.3d at 745.

Appellants list multiple instances in which they claim Farmers Group’s actions were unconscionable.  Specifically, Appellants complain that they had no say in the investigation, that the house was unsafe and contained soot, that Farmers Group requested an untimely EUO, and that Farmers Group filed a “bogus” appraisal lawsuit.   However, Appellants make no attempt to articulate how Farmers Group took advantage of them to an unfair degree other than to make the conclusory statement that “the timetable demonstrates that Appellants were helpless.”  The only action Appellants have presented any evidence on is the abandoned appraisal process—a process in which Appellants were represented by counsel.  And, because Appellants were represented by counsel, they were not “helpless” as they described.

In our previous discussion of the appraisal process, we held that even though Appellants, too, could have enforced the appraisal provision and chose not to do so, they were not precluded from bringing a cause of action.  However, while this reasoning might not preclude a claim for the breach of the appraisal provision, it does militate against the notion that Appellants were “helpless.”  Because they had this option and because they were represented by counsel during this process, we hold that Appellants presented no evidence that they were taken advantage of to a grossly unfair degree.  
See Head
, 159 S.W.3d at 745.

Conclusion

 We overrule Appellants’ second issue in part and sustain in part, holding that the trial court erred in granting Farmers Group’s no-evidence summary judgment as to the breach of the appraisal provision.  To the extent we addressed Farmers Group’s traditional motion for summary judgment, we overrule Appellants’ third issue and conclude that Appellants’ misrepresentation claims regarding breach of the insurance contract were not actionable under the DTPA.

CONCLUSION

For these reasons we reverse the trial court’s judgment as to the breach of the appraisal provision and remand the case to the trial court for further proceedings.  
See 
Tex. R. App. P
. 43.2(d).  We affirm the trial court’s judgment as to all other claims regarding Farmers Group and as to the Kaisers’ no-evidence motion for summary judgment.

DIXON W. HOLMAN

JUSTICE

PANEL B:  DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  December 13, 2007 

FOOTNOTES
1:
See 
Tex. R. App. P
. 47.4.

2:
Farmers Insurance Exchange, a Farmers Group entity, issued the insurance policy.

3:
Although the insurance policy was issued and the appraisal provision invoked by Farmers Insurance Exchange, Farmers Insurance Group actually filed the suit in district court to appoint an appraisal umpire.  

4:
Swafford failed, however, to provide any context for this finding, such as what the levels were before running the unit.

5:
Appellants also attached a clarification document supplementing Miller’s deposition.  In that document, Miller states that the holes in the furnaces, which he admitted that he did not inspect in detail, and the history of the incident as related to him by Tammy support the “likelihood” that the furnaces caused the damages and that his observations did not indicate another plausible source.  He also states that he believes that candles were not the cause of carbon monoxide symptoms.  This clarification establishes few more details than the excerpts attached to the motion.  The end result remains that Miller conducted no tests to determine the source of the soot and any opinion as to the source is based on an assumption that a combustion incident occurred.

Miller also stated that elevated levels of carbon monoxide usually come from leakage in the heating system.  However, there was no evidence in the excerpts provided that Miller ever tested for carbon monoxide or what elevated levels he is referring to.  Further, Miller never connected this statement to any evidence regarding soot.

6:
Farmers Group attached Miller’s entire deposition to its combined motion for summary judgment.  But because Farmers Group filed only on no-evidence grounds as to the breach of contract claims, we will not consider any evidence attached to Farmers Group’s motion on the issue of breach of contract, including the entire Miller deposition record, unless that evidence creates a fact issue.  
See Binur v. Jacobo
, 135 S.W.3d 646, 651 (Tex. 2004).

7:
Appellants attached to their response to Farmers Group’s motion a table summary of tests performed by Farmers Group’s inspection—not Miller’s—that shows that there was discharge from the heater but also shows that there was some soot from the fireplace, grease, and candles.  Furthermore, the table summary shows that the testing was unable to rule out candles, grease, and the fireplace as sources of soot in several areas of the house.

8:
Farmers Group now makes no claim as to what the actual cause was, just that Appellants never presented evidence that definitively identified the source.

9:
The appraisal provision states in part that “If you and we fail to agree on the actual cash value, amount of loss or the cost of repair, either can make a written demand for appraisal.  Each will then select a competent, independent appraiser and notify the other of the appraiser’s identity within 20 days of receipt of the written demand.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a Judge of a District Court of a judicial district where the loss occurred. . . .”

10:
Appellants argue that Farmers Group breached the appraisal provision by failing to complete the appraisal process and by not hiring a qualified appraiser.  Because we concluded that Farmers Group breached the appraisal provision by abandoning the appraisal process, we need not address whether Appellants provided some evidence of Farmers Group’s failure to appoint a qualified appraiser.

11:
Article 21.55, which at the time of this lawsuit provided prompt payment guidelines almost identical to those in the insurance contract, was repealed in 2005 for purposes of re-codification only. 
See
 
Act of June 21, 2003, 78th Leg., R.S., ch. 1274, § 26, 2003 Tex. Gen. Laws 3611, 4138.  No substantive changes were made to the prompt payment guidelines, which are now codified at section 542.055 of the Texas Insurance Code. 
See 
Tex. Ins. Code Ann.
 § 542.055 (Vernon 2007); 
Act of June 21, 2003, 78th Leg., R.S., ch. 1274
 § 27, 2003 Tex. Gen. Laws 3611, 4139.

12:
Appellants mention in the last sentence of both their response to Farmers Group’s combined motion for summary judgment and in their brief on appeal that Farmers Group breached their duty of good faith and fair dealing, but they failed to argue or present any discussion at all in the body of their brief regarding these contentions.  Therefore, we decline to address these issues in our decision.  
See
 
Tex. R. App. P
. 38.1(h).

13:
Appellants specifically listed subsections 1, 2, 3, 5, 12, 14, 22, and 23, which has now been renumbered as “24.“  
See 
Tex. Bus. & Com. Code Ann
. § 17.46.

14:
In their reply brief, Appellants point to Farmers Group’s amended answer to the trial court, in which Farmers Group stated that FIE had no privity of contract with Appellants.  However, Appellants have failed to produce any evidence that this representation caused any harm.

15:
The trial court granted Farmers Group’s motion to strike expert Miller’s testimony or opinions on “medical causation or physical injuries from soot in general or [Appellants’] alleged physical problems arising from the soot alleged to be present in this case.” 

16:
Appellants failed in their response and again on appeal to connect any of these fourteen representations as well as the general allegations discussed in the preceding paragraphs to any of the section 17.46 violations listed in their brief.

17:
To the extent these are complaints regarding Farmers Group’s failure to repair the carpet in a timely manner, we hold that Appellants failed to argue this under the Insurance Code.

18:
Appellants mention that through its actions, Farmers Group is also in violation of the Insurance Code, but Appellants only point this out in the beginning of their DTPA argument—stating that a violation of the Insurance Code is also a DTPA violation—and again in the last sentence of their response and brief.  However, Appellants failed to make any argument regarding this misrepresentation and specific Insurance Code violations; thus, we will not address this issue in our decision.  
See
 
Tex. R. App. P
. 38.1(h).  Moreover, Appellants specifically state that this is a laundry list violation, and the Texas Business Code is very specific that “false, misleading, or deceptive acts or practices” for the purposes of section 17.50(1)(a) are limited to the specifically enumerated misrepresentations in section 17.46(b).  
See 
Tex. Bus. & Com. Code Ann. 
§ 17.46(d).  Thus, because Appellants argue this only as a laundry list violation, we hold that they have presented no evidence.